Okay. All right. So we have law clerks who would be entitled to see the sealed documents. We have the attorneys for each side. The government lawyer is Joshua Waldman, is that correct? And then we have for the plaintiff appellants, Hini Shamsi. Oh, I'm sorry. So do we have that spelled wrong? H-I-N-A? Okay. Now, who do you have seated at council table with you? Okay. But those first two people, who are they? Okay. Okay. So we just have lawyers seated up here and then in the audience, the other people that we have, who do we have? Yeah. Okay. I don't think you, I'm not sure you have a right to be here because you don't have access to the sealed documents on this case, do you? Okay. So I'm going to ask you to leave for just right now. We're probably going to have, I just have to ask the attorneys certain things. Okay. And then who else do I have in the audience? Mr. Carrier. Mr. Carrier? Okay. You can stay. Okay. Okay. Okay. But do you have access to the sealed documents in your capacity? Well, that's the secret documents. Okay. But the sealed, so I'm going to use sealed and secret. Okay. And so the sealed records, the three judges have access to, and the government has access to. But the sealed records, so all of the lawyers would have access to, and the parties would. But I'm a little bit, the ACLU is not a party here, right? That's correct, Your Honor. We represent the users in the community. We don't have access to the export of ammunition. Well, you don't have access to the secret stuff. But the sealed stuff, but the ACLU does? Yes, because we Because you gave it to them? Not because, can they access it? Do they have, if they just want to go, there's public documents that everyone can look at. All right. Can they look at them that way? I don't think they can. Can they? Right. Okay. But the ACLU isn't co-counseled, right? Okay. Okay. So that's all been shared? Okay. Is that sound right to the government? Or I just, I want to have a conversation about the sealed documents, and I don't want anyone in here. And then there's someone back there, too. So you don't have access to the sealed documents, do you? Or are you? Okay. You can come back in after I have this discussion. But I have to ascertain what we can talk about with people in the room and out. Okay. Thank you. Okay. I think we've got this. All right. So I'm going to start and say that I'm going to talk about the secret documents first. And the judges, I can represent that the judges have all reviewed the secret documents in SCIF-type situations. We have not conferenced about the secret documents, because as you can see, Judge Fischer is here on video. We come from different locations. So if it becomes, and I talk to the people that the conditions that secret documents have to be looked into, we will not be talking about secret documents after the court proceeding today, other than if we feel we need to convene and discuss them. We don't have the facilities here to, with him on video, with us here, we don't have the, we would not have the facility to do that. So if we decide that as judges we want to talk about the secret documents in our resolution of the case, we will have to make arrangements that we do it so that we're all in secure locations, either by secure phones or as far as that goes. We don't feel it's necessary at this point to have an ex parte with the government today. And we don't have the secure situation to do that. If that came up as part of our decision in the case that we decided we were going to have an ex parte on that, I believe we would notify all the parties that that was going to occur. Now, that doesn't mean that the people that aren't entitled to hear it get to come, but at this point we're not, we've decided we don't need an ex parte at this point. But, and today we will not be discussing any of the secret documents in terms of what the contents are, but we've all reviewed them. We've also all reviewed the sealed documents. And so I think I looked at the request here, and so what I have to figure out here is Mr. Carrier has unsealed his documents, it's my understanding. But then the final orders are unsealed as to everyone but Mr. Kashim, I think. That's what I saw in the record. The final orders, yes. I saw somewhere that they were unsealed except for Mr. Kashim. Kashim, I'm sorry. Okay, does the government know? I have that Mr., did I say, is it Kashim, did I say? Kashim. So what I'm trying to ascertain... I'm going to break away from the video a minute, but I can hear you. Okay, you're still in hearing sight, okay. Okay, what I'm trying to ascertain in terms of, all right, we've allotted 15 minutes for each side here. And so I'm trying to decide what we can talk. My preference is not to close courtrooms when not necessary. And I've already discussed with the individual that's the clerk of the court here today that we're not going to live stream. But what is in open court after when we go back, we're not going to live stream. But at the end of it, I'll ask, did anyone think that they slipped? And if so, if they didn't, then it will be released after that. But I'm trying to ascertain at this point, if it makes sense, can we proceed in open court for the entire amount? Or do we need to talk, do we need to set part of it aside to go into a setting where it would just be these individuals that are in the courtroom right here at the end, say like 10 minutes in open court and then five minutes to talk about sealed? Because the thing that I noticed is it appears to me that sealed are the, if I understand this correctly, there's a whole, well, there's obviously a whole challenge to what the program is and the constitutionality of that. But then the individual plaintiffs, appellants entered, had an offer up of what they would say if there was a hearing. And they were always of the view it had to be a live hearing, which the district court ruled against. And so my understanding is that they only made an offer up, but they didn't actually present those as evidence in a hearing. So I have, I don't know those, if we want to talk about what's in those sealed documents. Is that going to be necessary to deciding this? Maybe come up to the podium just so that it's, Judge Fisher can hear you. Certainly, Judge Callahan. So first of all, you are correct that all of the determination letters except for plaintiff Cashim have been unsealed. There is information in the record with everyone, with the exception of Imam Karie that remains under seal. It's our position that argument could be had without reference to the sealed information, just the way that it happened in the district court where we were able to, when it became necessary, refer to the specific parts of the sealed records without disclosing what is in it. However, should the court want to discuss this in any greater detail, of course we'd be happy to answer questions about that sealed information, but in a closed session. Okay. Now the government. Thank you, Your Honor. I essentially agree. I think we can at least try to proceed in an open courtroom. I came prepared to discuss it without revealing the sealed material, but I do understand that often it's difficult to just talk about legal questions in a vacuum without getting into the facts. So perhaps if we get to a point where you feel like you need to discuss those things to get a better handle on the legal questions, perhaps then we could move to a closed courtroom, but at least start with the presumption of an open courtroom and see. It kind of depends on where your questions would like to go. Okay. Here's what I'm going to propose is you each have 15 minutes for each side. This is obviously an important case. And you're here by yourself and over on the plaintiff appellant side. Are you going to be doing all the argument? Okay. So I'm going to proceed. And we're going to take a short break and reconstitute or reopen the courtroom. I'm going to give you 15 minutes each side. 15 minutes total for the plaintiff appellants and 15 minutes for the government. At the close of this, I'm going to ask both of you, I'll ask my colleagues if they want to adjourn for five minutes on each side for the sealed materials, or if either of you at that point can call to my attention that there's something that you feel like you have to say, then I just don't like to close the courtroom any more than is absolutely necessary. I don't think that's a good idea. So we're going to take a short ten-minute recess. We'll come back out and then do it. Okay. Yes. Yes. We will not live stream. And at the end, if I don't ask you, remind me to ask you, because then it will be live streamed after, unless either of you point out that we had a slip somehow. Okay? Yes. But this is, this we're not going to put out to the public, right? Because I've cleared the courtroom. So well, I guess if either of you, if nothing's been said, I guess, are you both okay with that being part of what we release at the end? Okay. I was just doing it with the idea that I'm trying to let you know how to argue the case and how to spend your time, as opposed to, because we do have the secret, the sealed, and then the public record. All right. We'll take a ten-minute recess and then we'll be back on the record. Okay. Okay. Okay. Okay. Okay. Okay. Thank you. You have a clearance as a lawyer. So you are able to engage in the SIPA proceeding. And you would have some access to more than is made public. What would you do with that information if you got it, if you couldn't disclose it to your client or to anybody else who wasn't cleared? It's a good and difficult question, Judge Fisher. With respect to having information that only cleared lawyers are supposed to have, that even under SIPA, proceedings can be exceptional. Because under SIPA, the government can be required to provide information that is a summary, an unclassified summary of classified information so long as due process is guaranteed. There are protective orders that are put in place to which clients can also have information under protected schemes. And then with respect to that, what may very well be a small category of information, well, there's guidance that's provided from the Guantanamo cases where SIPA-like proceedings are applied in a civil context and where in that circumstance, lawyers are able to address and respond to whatever information the government may have. So the basic point is that there are alternatives to a categorical denial of reasons and evidence. And respectfully, Your Honor, Judge Callahan, we do think that in a case where the issues boil down to disputed facts and credibility, then as the Supreme Court said and as this Court has recognized in v. Singh, a clear and convincing evidence standard and live hearings are absolutely necessary to make that determination. Your Honor, I realize I've run out of time. Well, I'm going to give you a little rebuttal time anyway. I would like to ask a follow-up question. Go ahead. Based on Jefferson, the state secret case. When that came to us in Bank, we had 11 judges reviewing the confidential material, secret material. And you had 11 appellate judges validating or disagreeing with the government's reasons. So under the jurisdictional provision of this law we're talking about now, if you come to the Court of Appeal after processing, challenging a CSA ruling, you would have three judges who could review the secret documents, as we have, and you get a legal judgment as to whether the government is denying unconstitutionality, unconstitutionally, the rights of your client. What's wrong with that as a remedy? If I understand you, may I respond? Yes, please do. If I understand you correctly, Judge Fischer, and please correct me if I'm wrong, if your question is with respect to three judges reviewing the ex parte information that the government has provided, we think that that is unnecessary to adjudicate this case because the district court reviewed it under an undue risk to national security standard, which was error in and of itself. And what the court did in that context was engage in fact-finding herself without providing reasons on the public docket as to why that information could not have been provided, including why withholding of that information could not have been provided. But what's critical here is that as we understand it, and this is also clear from the government's brief, that ex parte information includes not just classified information. It also includes unclassified information. So it is a categorical broad brush which is being applied, but I don't know if I'm answering your Honor's question fully, and if I'm not, please let me know. Well, I think your answer was... If you wanted to know whether we need to do it in this case or not, you have a judicial officer reviewing whether the government has made a proper showing of justification for keeping somebody on the no-fly list. So, your Honor, I think what you're making then in that context, if you're talking about... I think your question goes to two issues. One is the propriety of reviewing that information and on the basis of that information making a determination. It is undisputed that the government hasn't provided the reasons for inclusion on the list. And this court in Al-Haramain and the Kind Hearts case that we cited... Well, I think you're kind of getting off the point. What he's saying, inherent to the process that's before us to determine, at the end of the process, three judges who have already looked at the secret documents, that you have a district judge that's looked at them, you have three judges here, that it is a check on the government's carte blanche ability to claim national security. And respectfully, your Honor, we don't think it's enough of a check. Well, okay. That's, I think, that's what he was asking you. And so that's why you think that there should be a live hearing, and I don't know whether you envision that there's maybe, think about this, witnesses coming from overseas, would confidential informants be expected to attend, and what would be the consequences if the government refused to produce witnesses based on national security concerns. So I'll give you two minutes on rebuttal. Let's hear from the government. Good afternoon. Good afternoon. I'm sorry. Good afternoon, Your Honors. My name is Joshua Waldman from the Department of Justice, representing the appellees. The no-fly list criteria are not unconstitutionally vague. The Supreme Court in Johnson and DiMaia repeatedly said that it is not unconstitutional to use a standard like substantial risk if you judge it against a person's real-world conduct. Okay, but I just have this fundamental problem with the difference between Johnson and DiMaia, which are published regulations that a person can read, and if, in fact, you could ascertain from what you're reading, I should or shouldn't do this because it's putting me on notice that it's prohibited. How does that work with criteria that's not published anywhere? We're starting from that you've already received a notice, you violated this criteria, and here's all the process you need to refute that. But part of the whole notice requirement is to give an ordinary person fair notice of what's prohibited before they engage in the activity. And I don't know how a citizen's supposed to know if I do this or I do that, I could end up getting this letter in the mail one day when that criteria isn't published anywhere. Right. Well, I'd say a couple of things. Number one is the question of vagueness goes to whether it is understandable by a reasonable person. It could be clear or not, and you could have notice of it or not, but whether you have advanced notice doesn't go to the question of clarity. The second of all, when you receive... But how is it clear if I can't find it? Where would you go to look this up? If I was going to be making a decision about wanting to invest in something or go to something and I wanted to know, gee, if I do that, is the government going to think that maybe I'm a suspect terrorist? Right. How would I know where to find that? Well, remember, Your Honor, if you look at the criteria, and we can all take a look at it, it's in our brief on page 2. All of these things are about posing a threat of committing certain things that are defined federal crimes. So there may be cases in other instances where you have unpublished requirements. Couldn't find one. Excuse me? Couldn't find one where an ambiguity issue was raised to an unpublished criteria. Well, there's certainly... Criteria. There's certainly no argument that the federal crimes that you pose a risk of committing are themselves vague or that people don't have notice of them. And if someone had an argument about innocent conduct that people would normally think of as innocent and they have sort of a reliance interest in saying, well, hey, now something's happening to me and based on something that nobody would think is anything other than innocent behavior, what I would just do, and we don't want to get into the sealed materials here, but I would urge you to look at the sealed materials and the... But again, now we're after the fact. If you've got a criteria that says that you're a threat of engaging in or conducting a violent act of terrorism and operationally capable of doing so, that doesn't tell me anything. That really doesn't tell me anything. It doesn't cite any definitions. It doesn't send me to any statute. You could certainly say, well, here's what you did, and we think it therefore resembles that, but how would I know that before I did it? How would you know that you are operationally capable of committing a terrorist act? Because how am I going to know what you consider an act of terrorism? Until you tell me after the fact, well, this is what you did, and therefore it just seems to lend itself to ad hoc analysis. Every person is going to be looked at individually and say, well, yeah, look what you did, so clearly you should have known. Well, I could concede that there may be tough cases on the margin, but the fact that there are tough cases doesn't make a regulation or statute unclear. And if you want to talk about whether it's clear to them, I mean, one of the best ways, let me just talk about some of the material that's the unsealed material in the record, for example. In the unclassified and unsealed summary for one of the plaintiffs, it talks about his prior conduct as a Mujahideen fighter in Afghanistan, his support for violent jihad, his financial support for people to go to Afghanistan to fight against Americans. That's unsealed, that's unclassified, it's in the record. Now, some people, some hypothetical person somewhere might have an argument to say, how would I know? But there's no way that based on this factual record someone could make that kind of case. I just thought I was doing innocent conduct. But you're doing a, aren't you then doing a, as applied to this particular individual, it's not vague. But if it's vague generally, you can't justify it by picking an example and saying, well, that makes it unvague because this person fits in. Isn't that exactly what Scalia was saying in Johnson? We don't look at examples to justify the vagueness of a rule because one example could fit in the definition. That doesn't make it not vague. Well, no, that's not exactly what he said. What he said is you can't defeat an as applied challenge by saying some conduct somewhere isn't vague. But you can defeat an as applied challenge by showing the plaintiff's conduct is clearly within the regulation. That's what Humanitarian Law Project said repeatedly. But I go back to, if you want to go back to Johnson and DeMai, I'm happy to do that, because they said, yes, it can be unclear to figure out what a threat is in some cases, but it is not unconstitutionally vague if that threat is measured by the real world conduct of the person. And that's precisely what's going on here. And so I don't think there's any Johnson and DeMai are the beginning and the end of the vagueness challenge in that respect. And I would also note that the criteria that they were listed under is given to them in their response. Now, nobody. But it's after the fact again. But the due process challenge here is all after the fact. It's a post deprivation challenge. It's not a pre deprivation challenge. Nobody's arguing that there's a due process challenge from the beginning. The question is, after the fact, do you get a chance to reasonably respond? And that's the same with respect to vagueness. Do you know the criteria when you respond? Yes, you do. And post deprivation is the only argument that's ever been offered here, not pre deprivation. If I could move on to the ‑‑ Give the circuit's initial jurisdiction to hear the plaintiff's substantive process claims. What are the roles of TSC and TSA in making the no fly list determinations under the revised DHS trip procedures? And does holding that the district court lacks jurisdiction conflict with Ninth Circuit precedent? So I'm a little bit confused on all of that. Sure. Let me ask the second question first, if I may. I don't think it conflicts with precedent, although it would change the outcome. The Ibrahim and Lateef precedents were based on the representations in the record about the relative roles of TSC and TSA under the old procedures. And they were based on declarations that were cited by the court first in Ibrahim and then relied upon in Lateef. Now we have a wholly different set of factual circumstances. And so I wouldn't say it's overruling them so much as the factual premises of both of those decisions has changed. And now let me turn to your first question, which is under the revised procedure, when a redress request is made, TSC formulates a recommendation and reasons in support of that and then forwards it to TSA. TSA makes the final substantive decision in that case. And at the record, Volume 2 of the ER, page 231, we have a declaration that says, TSA, quote, has full authority to order an individual removed from the no-fly list. And then on page 401, the TSA administrator makes the final decision as to whether a U.S. person will be maintained on the no-fly list. That's following a redress obligation. So we think that the factual premise of Ibrahim and Lateef, which was that TSC made the final substantive decision, is no longer correct. And therefore, we're now talking about an order of the TSA, and it belongs under 46-110, direct review in an appropriate court of appeals. So it shouldn't be in the district court? That's correct. So also, my question is, which I asked of plaintiff-slash-appellants, on the, is there evidence in the record of did they participate in the process? Or was it an offer of proof, or is it evidence? You know, in terms of how we analyze this. Let's assume that if we get past the constitutionality, but then we look to their, does the record support the findings here? Okay. The plaintiffs did participate in the process. They were sent an initial letter from TSA stating that they were on the no-fly list and giving them an unclassified summary of reasons for that. And telling them they can respond with written information, which they did, and that's all in the record. Largely, it was complaints about the constitutionality of the process rather than a response to the evidence itself. But in some instances, they attempted to rebut some of the information. It was not in the form of, say, sworn declarations under penalty of perjury. But they're entitled to either try that, and some people have done that. Not in this case. But then some people just have their lawyers write letters saying our plaintiff contends X, Y, and Z. Okay. This is like a hypothetical. I'm just trying to, okay. Let's assume that we said that, and I'm just saying this hypothetically. We haven't conferenced on this. Sure. But say that they don't get a live hearing, that the process that's set out is constitutional. But then we have to look individually as to each of the people. And so we have the public record, but then there are offers of proof for the most part are in the sealed documents. Can it be determined that there is, that there were sufficient reasons to keep them on the list without looking at the secret documents? I believe so. And probably the one that I would say has the most generic, some are more detailed than others. And probably the least detailed one would be after Mr. Knable? Yes. I would think that you would want to, for sure, for all of them, I do think that you'd want to look at the ex parte and camera material. But I think that there are some plaintiffs, for example, the unsealed one of Plaintiff Carrier. I think you can look at, I think that alone really ought to be sufficient. But of course, ultimately, if you had any doubts, I think you'd just look at the ex parte submission. I don't think you would have any doubts. But I, and I want to be, to be clear too, since my time is sort of winding down, that this court in Al-Haramain was very clear that the government is entitled, in these types of circumstances, to withhold classified evidence, that SEPA requirements are not required. The court said six or perhaps seven times that an unclassified summary is an acceptable procedure, and you don't have to give information, classified information, even to cleared counsel. Well, let me just ask you hypothetically, since that was brought up. If the court were to believe that a live hearing were necessary, let's say, and that's what the plaintiff appellants are requesting, if the government refused to produce a witness for a live hearing, what's the result there? That's a tough question. I hope that you wouldn't go to a live hearing, and we have all reasons, but I'm not going to fight the hypothetical. But I'm just doing the hypothetical. I think it's possible that if the court ordered us to say, for example, we had to produce cooperating witnesses or someone who was working undercover and reveal them, I suppose it's possible the government could assert state secrets at that point, and perhaps even in the way that Jefferson talks about that the case can't proceed if we're ordered to do these types of things. I'm not committing the government. I just want to be clear. I realize that's a hypothetical. But that's one possibility. What about a SIPA proceeding where it's not a live hearing except that whoever's there is a cleared attorney? Well, in Al-Haramain, the court said that the government was not required to do that, that providing an unclassified summary was sufficient to satisfy due process in that case, and emphasized in doing so that the government is not required to do every possible thing to mitigate the risk to the plaintiff of an erroneous decision. It's only required to do what is necessary for a fair and reasonable process. And Al-Haramain said seven times that an unclassified summary was sufficient in those situations. We have the same government interest in combating terrorism, the same government interest in withholding classified information, even from people who might otherwise have clearance. Are you saying that that case is binding to say we can't even entertain the notion of a SIPA hearing in this case? I think the way I read Al-Haramain is the government could voluntarily adopt SIPA if it wanted to, but is not constitutionally compelled to do so. It can, in the alternative, provide unclassified summaries. And I think that case, Al-Haramain, is as close to an on-point analogy as you can get in this. If anything, the private interests were greater in that case than they are in this case, where someone's assets were completely frozen, rendering them financially defunct, which, along with all the other harms that that would cause, would obviously mean that they couldn't purchase an airplane ticket to fly anywhere. Yeah, go ahead. I'm just on a jurisdictional issue. So the TSA is now making the ultimate decision in the order, the yes or no, you're on the list or you're off the list. And so your position is that the substantive challenge, therefore, should have been with the circuit, not with the district court. They wouldn't have jurisdiction, correct? That's correct. Do you consider the criteria in order of TSA? I mean, it is the basis for reaching the decision. Is that their order or is that TSC? I mean, is any of this ever properly before the district court? The procedures that are followed, the criteria that originates the investigation, the procedures that are followed to make the determination and the ultimate issue, all would presumably be the result of TSA's authority under Statute 114H to do these things. Well, that's a great question. I'm glad you brought up the distinction because the district court held only that the substantive decision to keep someone or remove someone from the no-fly list was TSA's and, therefore, a challenge to the substantive decision belongs under 46.110, the jurisdictional provision. It did not hold that it applied to the procedural for some of the same reasons that you're identifying here, which is that not all of the aspects of the procedure were necessarily controlled by TSA. For example, sometimes what's turned over, whether something's classified, that really derives from the originating portion of the intelligence community rather than TSA. So that is why the district court reached the merits of the procedural question, including the vagueness question and the due process question, but didn't reach the merits of the substantive question because that was where TSA makes a substantive decision, which may result in a different answer jurisdictionally. Couldn't you then argue that in light of the role that TSC and the other organizations have in doing all of the legwork on this really makes TSA's decision at the end, if not just perfunctory, so still intertwined with their participation that there is jurisdiction for the district court to consider the substantive due process claim? Well, no, I don't think that there's anything in the record to indicate that there's sort of a rubber stamping here, and certainly when it was the other way around in Ibrahim and Lateef, nobody asked whether TSC, which was at that point getting information the other way around, was doing rubber stamping. The only thing the court asked — Did TSA ever say, even though TSC recommended someone be on the no-fly list, that they were taking them off? Do you know? I'm not aware of that, but you can certainly see in the record, both in the unclassified material and in the ex parte sort of what is communicated. All right. So since the district court dismissed that part of it, is it before us now? Well, there's not actually any sort of petition under 46.110. As we said in our brief, if there was a timely one filed, we wouldn't object under the 60-day, because we think that there's a good cause exception that's in the statute. I think the court would have a lot of discretion on whether it wanted to consider it as sort of under its jurisdiction at this point, and I wouldn't necessarily oppose that. I think the proper procedure ought to be to have a petition filed, but I think the court has a lot of discretion with that. All right. Thank you. All right. We've taken you over, and we took you over. So I'm going to give you two minutes. Can you address that jurisdictional issue for us? Certainly, Your Honor, and with respect to the jurisdictional issue, the material parts of the process remain the same in that TSA and TSC still have a unique relationship in which TSC is making most of the most important decisions up until the TSA administrator's final decision. And I think it's important to emphasize that we asked the government for stipulations and information about the TSA administrator's access to information that the TSC had and whether that would happen, whether the TSA administrator had actually sought it, and the government refused to stipulate to that. We didn't get jurisdictional discovery on that. And this court in both Ibrahim and in Latif back in 2012, when thinking through the jurisdictional issues, was very focused on what kind of remedy it would be able to provide. And right now, given this process, the court would not be able to seek additional information from TSC, nor would the court, as this court just decided two weeks ago in the FICRE case, be able to prevent TSC from putting plaintiffs back on the list for reasons that hadn't ever been disclosed before. And very quickly, Your Honor, to address just a couple of other concerns that you have all raised. None of the purported allegations against our clients reflect unlawful behavior, and I think that's very important to keep in mind, because they've never been charged with a crime in the years over which they've been investigated. And so they are still unsure what it means to pose a threat, because none of that behavior is prohibited. It all is far short of the prohibited terrorism crime that we haven't challenged. Judge Benjivenko, the criteria and the process can be changed at any time. And, in fact, as we saw over the course of the case, the process and the information about it changed with each declaration that the government provided, again, because none of this has actually been codified. Judge Callahan, your question about witnesses and confidential informants, this is something that, again, courts are used to dealing with and can be dealt with in SIPA-like procedures. There can be proffers of information made. There can be stipulations that are provided in other contexts that do not require the categorical kinds of secrecy concerns ruling out any kind of meaningful process. And with respect to SIPA, my colleague in the government talked about how the government could choose to do it. Well, the government chose not to provide SIPA-like proceedings in the Guantanamo habeas litigation. And in that context, the courts ruled that the government had to be able to provide that information. And I understand that those are liberty interests with deprivation of liberty. But what I think is really important is if the courts are willing to provide that process to people who are noncitizens, have no contact with the United States, and have been declared enemy combatants, then surely our clients who have never been charged with any violent crime should get more process than what they have received now. All right. Just one second. Okay. Do either of my colleagues have any additional questions? No. Okay. So now that I guess what I need to ask everyone now at the end of it, did we say anything that can't be streamed? All right. And also, too, when we went outside the presence of, and I was setting out the procedures, is there anything there that anyone would have any difficulty of streaming that, the entire process? All right. So then what I'm going to order them to do at this point, then they can do it for live streaming. And so, okay. Thank you. This matter is submitted. If for any reason, depending on the nature of what we have to look at, if there's any reason that we have to contact either of you or both of you, we will do so. Thank you. Thank you.
judges: Fisher, Callahan, Bencivengo